FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

**ORIGINAL**

AUG 1 4 2003

LUTHER B. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STANLEY L. TRUELOVE            )
                               )
        Plaintiff,             )
                               )
vs.                            )      CIVIL ACTION FILE
                               )      NO. **1:03-CV-2431**
                               )                      **JEC**
RUST-OLEUM CORPORATION and     )
RUST-OLEUM SALES COMPANY,      )
                               )
        Defendants.            )
_____

### COMPLAINT FOR MONEY DAMAGES

**COMES NOW** the Plaintiff, Stanley L. Truelove (hereinafter

"Plaintiff") and shows the Court as follows:

### INTRODUCTION

1.

Plaintiff is alleging defendants' willful and intentional

discrimination against plaintiff in his employment on account of

plaintiff's age in violation of The Age Discrimination in

Employment Act of 1967, as amended, 29 U.S.C. §§621, et seq.

("the ADEA"), retaliation against Plaintiff for his complaint of

age discrimination in violation of 29 U.S.C. §623(d) and willful

and intentional breach of contract by defendant, unjust

enrichment, *quantum meruit*, violation of O.C.G.A. §10-1-702 and

promissory estoppel.

RULES RECEIVED
Consent to US Mag. _____
Pretrial Instructions _____
Title VII NJL _____

1

## THE PARTIES, VENUE AND JURISDICTION

2.

Plaintiff, a resident of Hall County, Georgia, was 45 years of age when terminated (his date of birth being September 28, 1955), and was then and is now in the protected age group under the ADEA.

3.

Defendant Rust-Oleum Corporation is a foreign corporation once registered with the Georgia Secretary of State and authorized to do business in the State of Georgia. Defendant Rust-Oleum Corporation transacted business and committed the discriminatory acts alleged herein within the State of Georgia, making said Defendant subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, O.C.G.A. §9-10-90, et seq.. Defendant's registered agent for service of process in Illinois is Prentice Hall Corporation, which may be served with the complaint and summons in this action at the registered agent's address, 33 North LaSalle Street, Chicago, Illinois, 60602-2607, after which service said Defendant shall be subject to the in personam jurisdiction of this Court. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (c) and LR 3.1, NDGa.

2

4.

Defendant Rust-Oleum Sales Company, Inc. is an Ohio corporation, whose corporate address is the same as the Defendant Rust-Oleum Corporation and is authorized to transact business in the State of Georgia. Defendant Rust-Oleum Sales Company, Inc.'s registered agent for service of process in Georgia is Prentice Hall Corporation, which may be served with the complaint and summons in this action at the registered agent's address, 40 Technology Parkway South, Norcross, Georgia, 30092, after which service said Defendant shall be subject to the *in personam* jurisdiction of this Court. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (c) and LR 3.1, NDGa.

5.

At all times relevant to this action, Defendant Rust-Oleum Corporation was engaged in an industry affecting commerce and had 20 or more employees for each working day in each of 20 or more calendar weeks in the then-current or preceding calendar year. Said Defendant is an employer covered by and subject to the ADEA.

6.

At all times relevant to this action, Defendant Rust-Oleum Sales Company, Inc. was engaged in an industry affecting

3

commerce and had 20 or more employees for each working day in each of 20 or more calendar weeks in the then-current or preceding calendar year.  Said Defendant is an employer covered by and subject to the ADEA.

7.

This Court has subject matter jurisdiction of this action pursuant to the provisions of the ADEA, 29 USC § 626(c)and 28 U.S.C. §1331.  Supplemental jurisdiction exists over Plaintiff's state tort claims, pursuant to 28 U.S.C. §1367.

ADMINISTRATIVE PROCEEDINGS

8.

Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination, which charge satisfied the requirements of 42 U.S.C. § 2000e-5(b)(e) and any other legal requirements that a charge be filed with the EEOC.  (Exhibit "A" hereto).

9.

Less than 90 days prior to the filing of this complaint, plaintiff received from the EEOC a notice of right to sue allowing this action to be filed.  (Exhibit "B" hereto).

STATEMENT OF FACTS AND CLAIMS

10.

Plaintiff has received paychecks and correspondence from

4

both Defendants as his employer and therefore, Plaintiff refers to the Defendants collectively as his employer henceforth.

11.

Plaintiff was employed as an Account Manager by Defendants beginning in 2001 (which employment occurred because Defendants purchased The Flecto Company, for whom Plaintiff had worked since 1996. During his employment by Defendants, Plaintiff called upon customers in an effort to generate sales of Defendants' products.

12.

Plaintiff was discharged by Defendants effective May 28, 2002.

13.

On May 28, 2002, Mr. Kelly Bye, Zone Manager for Defendants and supervisor of Plaintiff, met Plaintiff at a hotel near Hartsfield International Airport. Plaintiff had not been told the reason for the meeting.

14.

Mr. Bye told Plaintiff that his position was being eliminated and that a massive restructuring was occurring. Mr. Bye indicated to Plaintiff that he was getting back on the plane to fly to other parts of the country to continue discharging people.

5

15.

Mr. Bye did not indicate to Plaintiff that he was being dismissed for any performance problems.

16.

Plaintiff was not discharged by Defendants because of any performance problems.

17.

Plaintiff was sales manager of the year and a "quota buster" in 2001.

18.

Mr. Bye presented Plaintiff with the letter and severance agreement attached hereto as Exhibit "C". The severance agreement indicates that Plaintiff was entitled to twelve (12) weeks of severance pay regardless of whether or not he signed the severance agreement. He was entitled to six (6) additional weeks of severance pay beyond the twelve (12) weeks of severance pay if he signed the agreement.

19.

During his employment with Defendants, Plaintiff earned a commission of $7,500.00. Plaintiff earned the commission by bringing in the ICI Gliddon account for the Defendants. Defendants knew of Plaintiff's efforts in gaining the account and the commission of $7,500.00 was agreed upon prior to

6

Plaintiff's securing the account.

20.

During Plaintiff's meeting with Mr. Bye, Plaintiff mentioned the commission and was assured by Mr. Bye that he would be paid the commission. Mr. Bye made a note of the company's intent to make this payment on the severance agreement.

21.

In conflict with Mr. Bye's statements to Plaintiff, there was no major restructuring of the Defendants' operations causing the termination of Plaintiff's employment.

22.

During Plaintiff's employment with the Defendants, there were six account managers in the company (of which Mr. Truelove was one). The company determined that, instead of having six account managers, they would deem three of them to be account managers and three to be senior account managers, still a total of six positions.

23.

When Plaintiff was discharged, Scott Wood (a 25 year old employee at the time) was placed in one of the six (6) positions.

7

24.

Two of the other account managers (who were also within the protected age group) were negatively financially impacted. Following Plaintiff's discharge, an account manager within the protected age group was demoted.  Another account manager within the protected age group suffered the loss of his most financially beneficial accounts.

25.

After the company was notified by letter of Plaintiff's claim of age discrimination on July 12, 2002, Defendants stopped making the severance payments to which he was entitled in accordance with Exhibit "C".

26.

Further, following Plaintiff's notice to Defendants of his age discrimination claim, the Defendants verbally acknowledged that Plaintiff was owed the commission described in Paragraph twenty (20) above.  However, the Defendants later refused to pay the commission.

27.

After Plaintiff asserted his retaliation complaint, the company claimed it mistakenly quit paying his severance and reinstituted such payment.

28.

At the time of Defendant's discharge of Plaintiff from his employment, Defendant owed Plaintiff the sum of Seven Thousand Five Hundred Dollars ($7,500.00) commissions earned by Plaintiff.

29.

After Plaintiff asserted his retaliation complaint, the sum of seven thousand five hundred dollars ($7,500.00) minus applicable deductions, bringing the total deposit amount to five thousand eight hundred twenty-eight dollars and seventy-seven cents ($5,828.77), was directly deposited in Plaintiff's bank account in Gainesville, Georgia, on July 26, 2002.

30.

Thereafter, on the same date, Defendant ordered the bank to withdraw said sum from Plaintiff's bank account, without Plaintiff's permission.

31.

The said withdrawal of funds from Plaintiff's bank account by Defendant was wrongful and tortious.

## COUNT I

## AGE DISCRIMINATION UNDER THE ADEA

32.

Paragraphs one (1) through thirty-one(31) above are

9

incorporated and re-alleged in this Count I.

33.

Plaintiff's age was a motivating factor in Defendant's said discharge of Plaintiff.

34.

Defendants' acts and conduct violated the ADEA, 29 U.S.C. §§ 621 et seq., entitling Plaintiff to all remedies and recovery against Defendants allowed Plaintiff under the ADEA.

35.

Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below, as a direct and proximate result of Defendants' conduct.

36.

Defendants' discrimination against Plaintiff on the basis of age was willful, entitling Plaintiff to recover liquidated damages under the ADEA.

## COUNT II

### RETALIATION UNDER THE ADEA

Plaintiff incorporates and re-alleges paragraphs one (1) through thirty-six (36) above in this Count II.

37.

Defendants retaliated against Plaintiff in violation of 29 U.S.C. §623 for Plaintiff's opposition to Defendants'

unlawful employment practices described herein and for

Plaintiff's participation in filing a charge against Defendants

and assisting in the investigation thereof.

38.

Plaintiff suffered and continues to suffer damages as a

result of Defendants' retaliation and Plaintiff is entitled to

all relief set forth by the ADEA for said damages.

### COUNT III

### BREACH OF CONTRACT AND PROMISE, QUANTUM MERUIT, PROMISSORY

### ESTOPPEL AND UNJUST ENRICHMENT UNDER GEORGIA STATE LAW

39.

Plaintiff incorporates and re-alleges paragraphs one (1)

through thirty-eight (38) above in this Count III.

40.

Defendants willfully breached and violated its contracts

and agreements with, and promises to, Plaintiff, and are liable

and indebted to Plaintiffs for all remedies and recovery allowed

them by law (including but not limited to principles of

contract, promissory estoppel and quantum meruit) for such

breaches and violations, which Plaintiffs seek in this action to

the full extent allowed by Georgia law.

41.

Plaintiff shows further that defendant has acted in bad

11

faith, and has been stubbornly litigious, and has caused the plaintiff unnecessary trouble and expense, thereby allowing plaintiff to recover his expenses of litigation under O.C.G.A. § 13-6-11, and punitive damages under O.C.G.A. § 51-12-5.1 which plaintiff seeks hereby.

### COUNT IV

### VIOLATION OF O.C.G.A. §10-1-702

42.

Plaintiff incorporates and re-alleges paragraphs one (1) through forty-one (41) above in this Count IV.

43.

Defendants failure to pay Plaintiff his commission within thirty (30) days of his termination violated O.C.G.A. §10-1-702.

44.

Plaintiff is entitled to payment of his commission, exemplary damages and attorneys' fees and expenses of litigation because of said failure.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the following relief be granted:

a)    that Plaintiff have and recover from Defendant back pay, front pay, benefits and interest, and all other compensatory damages allowed by law;

12

b)    that Plaintiff have and recover from Defendant
      liquidated damages pursuant to the Age Discrimination
      in Employment Act, and punitive damages to the extent
      allowed by law;

c)    that Plaintiff recover his entire unpaid commission,
      plus exemplary damages and attorneys' fees and costs;

d)    that Plaintiff have and recover from Defendant
      attorneys' fees and costs;

e)    that Defendant be permanently enjoined from such
      conduct in the future;

f)    any and all other relief that this Court or the finder
      of fact deems equitable and just.

   **PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated this 14th day of August, 2003.

                                   ORR & ORR

                                   _by Kristine Orr_
                                   E. Wycliffe Orr, Sr.
                                   E. WYCLIFFE ORR, SR.
                                   Ga. Bar No. 554500

ORR & ORR
Attorneys at Law
P. O. Box 2944
Gainesville, Georgia 30503
(770) 534-1980
Fax: (770) 536-5910
                                   Kristine E. Orr
                                   Kristine E. Orr
                                   Ga. Bar No.  554630
                                   **ATTORNEYS FOR PLAINTIFF**

13



# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☐ EEOC | 11042 04225 |

_____ and EEOC

State or local Agency, if any

AUG 2 6 2002

EEOC-ATDO

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Stanley L. Truelove | 770-534-2034 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1398 Riverside Drive | Gainesville, GA 30501 | 9/28/55 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Rust-Oleum Corporation | approx 500 | 800-677-7878 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 11 Hawthorn Parkway | Vernon Hills, IL 60061 | Lake |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER(Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST 05/28/02    LATEST 07/26/02

☒☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I    STATEMENT OF PERSONAL HARM:

On May 28, 2002, I was discharged by Rust-Oleum Corporation. ("Respondent"), from my position because of my age. I had been employed with Respondent since March of 2001, which is the date my company merged with Rust-Oleum. I was with my prior company for five (5) years before the merger. I was then retaliated against following my complaint of age discrimination in that the company stopped paying my severance (to which I was entitled whether or not I signed a severance agreement) and the company failed to pay a seven thousand five hundred dollar ($7,500.00) commission, to which I was entitled as compensation for my work with the company and which the company had previously acknowledged I was due. Respondent eventually paid the severance, but not the bonus.

II    RESPONDENT'S REASON FOR ADVERSE ACTION:

The company official who informed me of my discharge was Kelly Bye, Zone Manager, who claimed that my job was being eliminated, which was untrue. There are the same number of positions available now as there were when I was discharge and a younger male was promoted to one of the positions. I also understand that the company may now be claiming performance problems, which is untrue and which was not the original reason given for my discharge. I have not had any explanation from the company concerning the company's retaliation against me for complaining of age discrimination. I understand that the company is now claiming a legal reason that they do not have to pay me the commission because I was not employed there on the date it became due. However, this was not my agreement with the company and the company only came up with this excuse after acknowledging the commission was owed to me.

III    STATEMENT OF DISCRIMINATION:

I was discharged by Respondent on or about May 28, 2002. I was not discharged for any performance problems. I was forty-six (46) years of age at the time of my discharge. I was retaliated against after I complained of the discrimination. I contend that I was discriminated against in violation of The Age Discrimination In Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq. ("the ADEA").

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 8/22/02 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date    Charging Party (Signature) | |

EEOC FORM 5 (Rev. 07/99)



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

EEOC Form 161-B (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Stanley Truelove<br>1398 Riverside Drive<br>Gainesville, GA 30501 | From: EEOC, Atlanta District Office<br>100 Alabama Street<br>Suite 4R30<br>Atlanta, Georgia 30303 |

[     ]    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 110A204225 | William M. Batts | (404) 562-6840 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[     ]    More than 180 days have passed since the filing of this charge.

[     ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[  X  ]    The EEOC is terminating its processing of this charge.

[     ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[     ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[     ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____        5/28/03

Bernice Williams-Kimbrough        *(Date Mailed)*
District Director

Enclosure(s)

cc:    Kris Orr, Esq.
       Chad W. Moeller, Esq.



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

**Rust-Oleum Corporation**
11 Hawthorn Parkway • Vernon Hills, IL 60061 • 847-367-7700 • FAX 847-816-2300



May 28, 2002

Mr. Stanley Truelove                    # 38
1398 Riverside Drive NE
Gainsville, GA  30501

Dear Stanley:

Rust-Oleum Corporation has been in the process of reviewing its current operations. Unfortunately, as a result of this review your employment will be terminated effective today, May 28, 2002.  You are eligible for severance pay and benefits in accordance with Rust-Oleum Corporation's Severance Plan.

We expect that you will have some questions regarding your benefits under this program.  The following information is provided in answer to some of those questions.  After reviewing this information if you have any further questions, please call me at (847) 816-2453, or Anna Maria Kirchner at (847) 816-2450.

## SEPARATION PAY

You will receive (12) weeks of basic severance pay at your current weekly rate.  Based on your current weekly rate of $1,487.96 that amount equals $17,855.52.

**In the alternative, if you decide to sign the enclosed Separation and Release Agreement, you will receive _enhanced_ severance pay (instead of basic severance) equal to Twenty-six Thousand Seven Hundred Eighty-three Dollars and 28/cents ($26,783.28). The basic and enhanced packages are not cumulative.**

You have 45 days to decide if you want to sign the Separation and Release Agreement.  It is an important legal document.  We urge you to consult with an attorney.

The basic severance package will be paid out in bi-weekly installments beginning no later than the first regular pay date following your termination date.  Your enhanced severance pay, less any basic amount previously paid, will be paid in bi-weekly installments within fourteen days following Rust-Oleum Corporation's receipt of your signed Separation and Release Agreement and if you do not revoke the agreement within seven (7) days after signing it.  Required taxes and withholdings will be made from these payments.  Should you accept employment during your severance period the balance of your severance payments will be paid in a lump sum.

## VACATION

You will be paid for all earned and accrued vacation, less any taken up through your last day of employment.  This payment will be in a lump sum no later than the next regular pay period following your termination and the date we receive the summary of your remaining vacation. Required taxes and withholdings will be made from this payment.

An  Company

## MEDICAL & DENTAL BENEFITS

Under the basic severance package, if you currently participate in Rust-Oleum Corporation's medical and dental insurance you will continue to be covered under this insurance (for the same coverage you currently have) for 12 weeks after your termination date. This coverage will reduce the 18 months of coverage you have under COBRA. During this time, you will be required to pay the employee portion of the premium. This amount will be deducted from your severance pay.

**If you select the enhanced severance package, you will be covered under Rust-Oleum Corporation's medical and dental insurance (for the same coverage you currently have) for eighteen (18) weeks after your termination date. This coverage will reduce the 18 months of coverage you have under COBRA. During this time, you will be required to pay the employee portion of the premium. This amount will be deducted from your severance pay. Again the basic and enhanced packages are not cumulative.**

When your insurance ends under either the basic or enhanced program, you can elect to continue your coverage for the appropriate number of months by paying the required COBRA premium. An election form from Applied Benefits, Inc. (CobraServ National Service Center) will be mailed to you. Should you become covered by another insurance plan prior to this date and wish to cancel your participation in our insurance program, simply notify Linda Clark in the Human Resources Department at Rust-Oleum Corporation, 11 Hawthorn Parkway, Vernon Hills, IL 60061 in writing indicating the date you want coverage discontinued.

## LIFE INSURANCE BENEFITS

Your life insurance coverage provided by Rust-Oleum Corporation will terminate with your employment. There is a conversion privilege through Reliastar, which allows you to convert your life insurance policy to personal coverage.

The conversion application is enclosed. There is an address on the form for you to send the application to, if you are interested.

## LONG TERM DISABILITY, AD&D AND SUPPLEMENTAL INSURANCE BENEFITS

Your long term disability and AD&D insurance coverages also terminate with your employment. If you participate in Supplemental Life and /or Voluntary AD&D coverages, these also terminate with your employment. There are no conversion privileges for any of these coverages.

## RETIREMENT PLANS

Since you have completed at least five years of service with the Company, you are **vested** in your RPM Retirement Plan benefit and are eligible to receive a pension benefit from the Plan. A calculation of your benefit will be sent to you by our third party administrator Watson Wyatt within the 60 days, along with an application form for your use in indicating the date you want your benefit to begin and any options you wish to elect.

If you are married at the time of your termination, your spouse may be covered under our Pre-Retirement Surviving Spouse plan. If you should die before receiving your vested benefit, your spouse could be eligible for a portion of that benefit. Please forward to us a copy of your spouse's birth certificate or other proof of age so that we may keep these records on file.

New Item Money
- will receive new item money for ICI store business in the amount of $7500.00. Paid in full at bonus time payout. Approximately, August 1, 2002.    5/28/02

**401(k) SAVINGS PLAN**

If you are a participant in the plan, you are eligible to receive a lump sum distribution of your account balance in the RPM 401(k) Savings Plan. A Distribution Request form is enclosed. Please complete the highlighted areas and mail them to Linda Clark at Rust-Oleum Corporation, 11 Hawthorn Parkway, Vernon Hills, IL 60061.

If your balance is more than $5,500, you may elect to keep your balance in the Savings Plan. If your balance remains in the Plan, you will continue to receive quarterly statements and can make changes to your investments by calling TrustTalk at (800) 962-2149.

Our 401(k) plan is a qualified retirement plan. Your account is not taxable while you are employed; however, distributions are subject to federal tax for the year in which they are received. It may be possible for you to defer payment of taxes by rolling your account balance over to another qualified plan or an individual retirement account (IRA). Please review the enclosed tax notice regarding your distribution. For additional information, you should consult a tax or financial advisor.

**OUTPLACEMENT SERVICES**

If you select the enhanced severance package, we will retain the services of Drake, Beam, Morin on your behalf. The services provided will be consistent with your level within the Rust-Oleum Corporation organization. If you have questions regarding such services contact Anna Maria Kirchner at (847) 816-2450.

**EMPLOYEE ASSISTANCE**

During your transition, our employee assistance program will remain available to you and your family. They can be reached at (800) 424-6061.

Please note that you will not be eligible to receive any of the additional benefits and severance pay described above in the event you are offered and you accept a relocation package or another position within RPM.

If you have any questions regarding the information contained in this letter, please contact me or Anna Maria Kirchner at the numbers listed above.

We appreciate the dedicated service you have given Rust-Oleum Corporation and wish you every success in making a satisfying and rewarding transition.

Sincerely,

Steve Gillmann
V.P., Administration

## SEPARATION AND RELEASE AGREEMENT

This Separation and Release Agreement ("Agreement") is made by and between Rust-Oleum Corporation ("The Company") and Mr. Stanley Truelove ("You or Your"). Your employment with The Company will be terminated May 28, 2002 as a result of the decision to eliminate your position within the Company. You and The Company agree to that termination on the following terms:

1. CONSIDERATION. In exchange for the mutual promises set out in this Agreement, The Company agrees: (a) to pay You severance pay in the gross amount of Twenty-Six Thousand Seven Hundred Eighty-Three Dollars and 28/100 cents ($26,783.28), minus all applicable taxes and withholdings; (b) to provide 18 weeks of coverage under The Company's medical and dental insurance plan with your having to contribute the employee portion of the premium (You are only entitled to receive the same medical and dental insurance as You had just prior to the Termination Date); and (c) to provide You with outplacement assistance of a nature and amount deemed appropriate by The Company. All of the above represents the Enhanced Severance Program. You agree that these payments and benefits are in excess of any money or benefits to which You are otherwise entitled. Subject to the terms of this Agreement and your compliance with those terms, The Company will pay the above severance in two week installments and in accordance with standard payroll procedures, continue Your medical and dental insurance, and make provisions for your outplacement services. Severance payments will continue until: (1) the severance has been paid in full or (2) You violate this Agreement, whichever comes first. Should you accept employment during the severance period, the balance of your severance will be paid to you in a lump sum.

2. RELEASE. In exchange for the promises and the payments to be made by The Company under this Agreement, You agree to release, forever discharge, and not to sue or assert any claim or cause of action against The Company, RPM, Inc. or any of their affiliates, shareholders, directors, officers, agents, representatives, and employees, past and present, from or based on any and all known or unknown claims or liabilities, arising out of or in any way connected with Your employment and/or separation from The Company. This release, discharge and agreement not to sue includes, without limitation:

(a.) any claims or causes of action You have or may have relating to discrimination under any federal, state or local statute (whether before a court or an administrative agency), including, but not limited to, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act of 1974, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, and the Georgia Fair Employment Practices Act, all as amended from time to time;

(b.) any claim or cause of action concerning The Company's personnel policies, practices, handbook, wrongful discharge, estoppel, breach of contract, damage to personal or professional reputation, misrepresentation, and/or intentional or negligent infliction of emotional distress, violation of public policy, the right to a jury trial, or any other common law claim.

You acknowledge and agree that if You do make, assert or maintain any lawsuit, claim, demand or action which would be covered by this Agreement, You will immediately pay the Company an amount equal to the amount of severance and other payments that have been made to You pursuant to Paragraph 1, and You agree to indemnify The Company against all liability, costs and expenses, including reasonable attorneys' fees, related to such breach. Excluded from this provision are any claims by You that this Agreement is not a valid waiver and release under the Age Discrimination In Employment Act, and any resulting ADEA claims if this Agreement is determined by a court to be invalid.

3. CLAIMS EXCLUDED FROM AGREEMENT. Excluded from this Agreement are any claims which cannot be released or waived by law, including but not limited to workers' compensation claims, claims for vested benefits and the right to file a charge with or participate in an investigation conducted by certain government agencies. You are releasing and waiving, however, Your right to any monetary recovery should any government agency (such as the Equal Employment Opportunity Commission) pursue any claims on Your behalf.

4. CONFIDENTIALITY. You agree that the terms of this Agreement are confidential and You covenant and promise not to disclose any of the terms hereof to any third party, with the exception of Your spouse and Your legal, tax or financial advisors, and that You will be responsible for ensuring each of their compliance with these terms. You agree that at no time will You utilize for Your personal benefit or to the detriment of The Company, or RPM, nor will You disclose, directly or indirectly, to any person, any Confidential Information without The Company's prior written consent. For purposes of this Agreement, "Confidential Information" shall include, but not be limited to, any knowledge or information not already available to the public which You may have acquired during the period of Your employment concerning The Company's products, inventions, formulations, designs, manufacturing or engineering processes, marketing, selling, pricing, suppliers, customers and their requirements, product liability and warranty claims, litigation of any kind or nature, employees, employees' compensation and benefit plans, business or financial information and plans, scientific or technical information, trade secrets, accounting or tax information or other private or confidential matters of The Company or its parent, subsidiaries or affiliates

5. NON-DISPARAGEMENT. It is agreed that neither The Company nor You will, directly or indirectly, individually or in concert with others, engage in any conduct or make any statement that is calculated or likely to have the effect of undermining, disparaging or otherwise reflecting poorly upon the other, including upon the reputation of The Company, RPM, Inc. (and its affiliated companies), or their good will, products, employees or business opportunities or that is in any manner detrimental to the best interests and welfare of The Company, RPM (and its affiliated companies) and/or their officers, directors, agents, representatives, or employees, past or present.

6. REFERENCES. Upon written request to Steve Gillmann, Rust-Oleum Corporation, 11 Hawthorn Parkway, Vernon Hills, Illinois 60061 by You, The Company will provide a service letter including the following information: Your last position title; a brief description of Your job duties; dates of employment; final salary; and a statement that You were terminated as part of an operational reorganization.

7. OTHER AGREEMENTS. You acknowledge and agree that You were advised in writing to consult with an attorney prior to signing this Agreement. You acknowledge and agree that You fully understand Your right to discuss all aspects of this Agreement with legal counsel. You acknowledge and agree that You have signed this Agreement knowingly and voluntarily with full understanding of its terms and after having had the opportunity to consult with Your attorney. You acknowledge and agree that You have not been coerced, threatened, or intimidated into signing this Agreement.

You acknowledge and agree that You have been paid for all hours worked, and have not suffered any on-the-job injury for which You have not already filed a claim.

8. TIME FOR CONSIDERATION AND FOR REVOCATION. You acknowledge and agree that You have been given a period of at least forty-five (45) days within which to read, consider and understand this Agreement. You may voluntarily sign this Agreement prior to the end of the forty-five (45) days but no earlier than Your last day of work. Return both copies of Your signed Agreement to Steve Gillmann, Rust-Oleum Corporation, 11 Hawthorn Parkway, Vernon Hills, Illinois 60061. You understand that You may revoke this Agreement during the seven (7) days following the signing of this Agreement and that the Agreement will not become effective until that seven-day revocation period has expired. You may revoke this Agreement by mailing a letter stating such intent to Steve Gillmann, at the above address postmarked no later than the seventh day after the date on which You signed the Agreement.

9. NON-ADMISSION. This Agreement is not intended to constitute and should not be construed as constituting an admission of fault, wrongdoing or liability by either party, but rather reflects Your desire and The Company's to resolve fairly and amicably any past, present, or future disputes or claims.

10. COMPANY PROPERTY. You agree that prior to receiving any benefits under this agreement You will return to The Company any and all Company property, equipment or information (including but not limited to keys, security or access cards, computers, phones, pagers, cameras, Company issued credit cards (e.g. air travel, telephone, car rental etc.), files, computer stored data, catalogs, samples, documents or other such Company property which came into Your possession, or which You prepared or helped prepare, in connection with or during Your employment with The Company. You will not retain any copies of such property or information and will not use any such property or information to the detriment of The Company.

11. <u>BREACH OF THE AGREEMENT</u>. In the event You breach any provision of this Agreement, The Company shall be relieved of any remaining obligations under this Agreement. You agree to indemnify The Company from and against all liability, costs and expenses, including reasonable attorneys' fees, arising out of a breach of this Agreement. In view of the difficulty of determining damages in the event of any such breach, it is agreed that The Company will be entitled (and not as a penalty) to liquidated damages in the amount of all payments and benefits from The Company under this Agreement in excess of the basic severance package plus reasonable attorneys' fees and court costs, if any, incurred by The Company in enforcing this clause. Excluded from this provision are any claims by You that this Agreement is not a valid waiver and release under the Age Discrimination In Employment Act, and any resulting ADEA claims if this Agreement is determined by a court to be invalid.

12. <u>ENTIRE AGREEMENT</u>. By signing this Agreement, You agree to be bound by it, and You agree that You are bound by Your Representative's/Employee's Agreement, if any. This Agreement (including the cover letter dated May 28, 2002, and Your Representative's/Employee's Agreement, if any) constitutes the entire agreement between You and The Company concerning the subject matter hereof and supersedes all prior and contemporaneous agreements or understandings, if any, between the parties relating to the subject matter hereof. You further represent that no promise, inducement or Agreement not herein expressed has been made and that the terms of this Agreement are contractual. Any modification of this Agreement to be effective must be in writing and signed by You and The Company.

13. <u>ASSIGNMENT</u>. The rights and benefits of The Company under this Agreement shall be transferable and assignable. The payments and other considerations described in this Agreement are personal to You and will not continue for the benefit of a third party. You may not assign or delegate any of Your rights or obligations hereunder without first obtaining the written consent of The Company.

14. <u>COOPERATION CLAUSE.</u> You agree to cooperate fully with The Company and its affiliates in defending against various claims, lawsuits or matters pending before any administrative agencies by providing assistance including, but not limited to, preparing for and giving truthful deposition and/or witness testimony. The Company will reimburse You for any reasonable expenses incurred in providing assistance in these matters.

15. <u>SEVERABILITY CLAUSE</u>. Should any portion of this Separation Agreement and Release be declared or be determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be part of this Separation Agreement and Release.

16. <u>CHOICE OF LAWS</u>. The provisions of this Agreement shall be construed in accordance with the laws of the State of Georgia.

17. ACKNOWLEDGMENT. YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE BEEN ADVISED THAT THE AGREEMENT IS A LEGAL DOCUMENT, AND HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY CONCERNING THE AGREEMENT. YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE CAREFULLY READ AND FULLY UNDERSTAND ALL THE PROVISIONS OF THIS AGREEMENT, AND ARE VOLUNTARILY AND KNOWINGLY SIGNING THE AGREEMENT. YOU ACKNOWLEDGE AND AGREE THAT YOUR EMPLOYMENT HAS BEEN TERMINATED AS A RESULT OF A POSITION ELIMINATION.

**Rust-Oleum Corporation**

By: _____
        Steve Gillmann

Dated: _____

**EMPLOYEE**

By: _____
        Mr. Stanley Truelove

Dated: _____

Form Number: DIS_008          DISTRIBUTION REQUEST FORM          Plan Number:

The shaded areas should be completed by your Human Resources or Benefits Representative (Plan Sponsor or Committee).

*PLEASE READ THE INSTRUCTIONS AND THE ATTACHED NOTICE BEFORE COMPLETING, AND OBTAIN REQUIRED AUTHORIZATIONS. USE BLUE OR BLACK INK ONLY.*

PLAN NAME:

## EMPLOYEE INFORMATION

NAME OF PARTICIPANT: Stanley Truelove          PAYGROUP: L1110          0

SOCIAL SECURITY NUMBER: 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          DATE OF BIRTH:          DATE OF HIRE:

HOURS CREDITED IN PLAN YEAR OF TERMINATION          YEARS OF VESTED SERVICE          TERMINATION DATE

BASIC VOLUNTARY DEDUCTION DATE          VESTED PERCENT          PARTICIPATION DATE

DOES THE PARTICIPANT HAVE AN OUTSTANDING LOAN?

## PAYEE INFORMATION

Payee is: (check one)
- [X] Participant
- [ ] Spousal Beneficiary
- [ ] Non-Spousal Beneficiary
- [ ] Spousal Beneficiary (QDRO)
- [ ] Non-Spousal Beneficiary (QDRO)

Social Security Number: _____-____-_____

Name: _____

Address: _____

City, State, Zip: _____

Payee is a Non-Resident Alien  [ ] Yes  [X] No

## DIRECT ROLLOVER INFORMATION (if applicable)

[ ] IRA     [ ] Qualified Plan     NOTE: Checks mailed to payee's address

Receiving Custodian/Trustee: _____

Plan/Account Name: _____

Plan/Account Number: _____

Wire Instructions (minimum $10,000 net):

Institution _____ City _____

ABA/Routing # _____ Account # _____

## REASON FOR DISTRIBUTION (check one and enter amount, if applicable)

[X] Termination  [ ] Retirement  [ ] In-Service Withdrawal $_____ or amount available, if less  [ ] After Tax Withdrawal $_____ or amount available, if less  [ ] Hardship $_____ or amount available, if less  [ ] Plan Termination  [ ] QDRO  [ ] Disability  [ ] Required minimum distribution (RMD, age 70 ½)  [ ] Death

## FEDERAL TAX INFORMATION  *More than one box may apply, please read the instructions*

Distribution Eligible for Rollover – (Only a Participant or Spouse can elect a rollover.)
1. [ ] Direct Rollover to IRA or employer plan (no withholding)
2. [ ] Direct Rollover to IRA or employer plan (no withholding) of $_____ or _____% AND Distribute remainder to Participant or Beneficiary (20% withholding)
3. [ ] Distribute to Participant or Beneficiary (20% withholding) of $_____ or _____% AND Rollover to IRA or employer plan of remainder (no withholding)
4. [ ] My account includes After-tax Contributions. Distribute $_____ (or the After-tax Contributions balance, if less) to Participant or Beneficiary and rollover any remaining After-tax Contributions balance as elected above. This amount is in addition to any distribution to Participant or Beneficiary elected above. Do not check this box if you are checking box 5 or box 6.
5. [ ] Direct Rollover to an IRA of my After-tax Contributions. Attach information regarding the Custodian/Trustee and Account Name and Number.
6. [ ] Distribute to Participant or Beneficiary (20% withholding, except on any After-tax Contributions)

Distribution NOT Eligible for Rollover (Hardship; RMD; Installments over 10 or more years, etc.).  [ ] No withholding  [ ] Withholding  $_____ or _____%

## STATE TAX INFORMATION

If you live in one of the following states, minimum mandatory state tax will apply (unless you elect to have more withheld):
CA, DE, GA, IA, KS, LA, ME, NC, MA, OK, OR, VT, VA.  Higher withholding?  [ ] No  [ ] Yes  $_____ or _____%
If you reside in another state, do you wish state tax withheld?  [ ] No  [ ] Yes  State: ____ $_____ or _____%

## FORM OF PAYMENT (check one form only)  Please refer to your Summary Plan Description for details on available forms of payment

[ ] SINGLE SUM PAYMENT:
- [ ] Cash  [ ] Company stock — You may elect distribution of Company stock only if permitted under the Plan and only for the portion of your account invested in the Company stock fund. (If nothing is selected below, distribution of amounts invested in the Company stock fund will be made in 100% cash.)
  - [ ] 100% shares  [ ] _____ # of shares and the remainder in cash. Fractional shares are paid in cash.

[ ] ANNUITY PAYMENTS:
- [ ] _____% Joint & Survivor Annuity     [ ] Monthly  [ ] Quarterly  [ ] Yearly
- [ ] Single Life Annuity     [ ] Monthly  [ ] Quarterly  [ ] Yearly

[ ] INSTALLMENT PAYMENTS (Available only if permitted under the Plan):
- _____ # Years (not to exceed maximum number of years permitted under the Plan.)  [ ] Monthly  [ ] Quarterly  [ ] Yearly
- Date Installments to Begin ____/____/____  Date Installments to End ____/____/____

## FOR BANK USE ONLY

| PAYMENT DATA | | TAX FORM DATA |
|---|---|---|
| | Total Gross | $ ____ |
| | Employee After Tax Contributions | $ ____ |
| | Taxable Amount or Ordinary Income | $ ____ |
| | Net Unrealized Appreciation | $ ____ |
| | Capital Gains Portion | $ ____ |
| | Tax Form Not Required | [ ] |
| | Category of Distribution | ____ |
| | Analyst Approval | Date |

FOR BANK USE ONLY

**ACKNOWLEDGMENT AND PARTICIPANT'S OR BENEFICIARY'S SIGNATURE** (Required Signature)

If you are a Participant, a Spousal Beneficiary, or a Spousal Beneficiary (QDRO) and your vested account balance is greater tha   n $5,000, you have the right to defer distribution until the later of normal retirement age under   the Plan or age 62 (unless a QDRO provides otherwise). If yo   ur vested account balance is greater than $5,000, you have the right to consider  whether to consent to a distribution prior  to such age for at least 30 days from th e date that you received this form. You also have the right to consider whether to elect a DIRECT   ROLLOVER for at least 30 days from the date that you received the   Special Tax Notice Regarding Plan Payments. YOU CAN NOT WAIVE THE 30-DAY PERIOD FOR CONSENT   TO THE DISTRIBUTION, THEREFORE DISTRIBUTION CANNOT BE MADE TO Y   OU BEFORE THE 30-DAY PERIOD HAS ENDED.

If you are a Non-Spousal Beneficiary, distribution will be made   pursuant to your elections above. You cannot elect a rollover.

If you are a Non-Spousal Beneficiary (QDRO), distribution will be made pursuant to the qualified domestic relations order and y   our elections above and will be taxable to the Participant. You cannot elect a rollover.

I understand the foregoing and acknowledge receipt of the Special Tax   Notice Regarding Plan Payments. If I am a Participant, a   Spousal Beneficiary, or a Spousal Beneficiary (QDRO), my vested account balance exceeds $5,   000, and I have not reached normal retirement age under the Pl  an (or age 62, if later), I consent to distribution.

I certify that to the best of my knowledge the information provided is true and correct. I affirmatively elect distribution as   specified above, adjusted for my income tax elections noted. I further understand that the plan sponsor or committee must sign this distribution request form b   efore distribution can be made.

If I am electing payment in a single sum or installments, I hereby waive the qualified annuity applicable to me (a joint and su   rvivor annuity for a married Participant, a single life annuity in all other cases).

PARTICIPANTS ONLY, CHECK ONE OF THE FOLLOWING BOXES, AS APPLICABLE TO YOU:

☐ I hereby certify that I am not married and there are no Plan benefits payable to a former Spouse or other alternate payee unde   r a qualified domestic relations order.

☐ I hereby certify that I am not married but there may be a reduction in my benefits as a result of a qualified domestic relatio   ns order.

☐ I hereby certify that I am married. I understand that unless   I am electing a qualified joint and survivor annuity, my Spouse   must sign the spousal consent on the next page.

_____          _____
Participant's or Beneficiary's Signature                        Date

**PLAN SPONSOR OR COMMITTEE AUTHORIZATION**  (Required Signature)

I certify that I have reviewed the information on this form   and to the best of my knowledge it is true and correct, and I hereb  y authorize and direct the Trustee to make distribution in accordance with the foregoing elections.

_____          _____          _____
Authorized Plan Signature                        Title:                        Date

Date Delivered  to Participant/Beneficiary:  5-28-2002

# PLEASE SEE PAGE 3 FOR REQUIRED SPOUSAL CONSENT.

IF YOU HAVE ANY QUESTIONS REGARDING THE INFORMATION REQUESTED, PLEASE CONTACT YOUR HUMAN RESOURCES OR BENEFITS REPRESENTATIVE.

RETURN THIS FORM TO YOUR HUMAN RESOURCES OR BENEFITS REPRESENTATIVE. DO <u>NOT</u> RETURN IT TO THE TRUSTEE. THE DISTRIBUTION WILL NOT BE PROCESSED WITHOUT YOUR EMPLOYER'S APPROVAL. BE SURE TO KEEP A COPY FOR YOUR RECORDS.

YOUR COMPLETED REQUEST SHOULD BE FORWARDED TO THE TRUSTEE BY YOUR HUMAN RESOURCES OR BENEFITS REPRESENTATIVE.

**SPOUSAL CONSENT (Spouse's Signature MUST be witnessed by the Plan Sponsor or a Notary Public)**

The Spouse's signature below (if the Participant is married) evidences consent to this distribution as adjusted for tax election noted when witnessed by a Human Resources or Benefits Representative (Plan Sponsor or Committee) or a Notary Public.

I, _____, the Spouse of the Participant, hereby approve of, and consent to my spouse's waiver of the qualified joint and survivor annuity form of payment, the timing of the distribution, and the payment option elected by my spouse as provided above. I understand that under the terms of the Plan benefits in excess of $5,000 must be paid to my spouse in the form of a qualified joint and survivor annuity unless I consent to a my spouse's waiver and election of the form of payment specified above. I also understand that my consent is irrevocable and the effect of my consent will be to have retirement benefits under the Plan paid in a different form and that no surviving spouse benefits will be paid to me in the event of my spouse's death. If installment payments are available under the Plan and my spouse elects that form of payment, I understand that if my spouse dies before distribution of the entire vested account balance I will be my spouse's beneficiary unless I have consented to my spouse's designation of another beneficiary on the attached Beneficiary Designation Form. I further understand that my spouse may not change the form of payment on the first page of this form (or, if applicable, the beneficiary designated on the attached Beneficiary Designation Form) without first obtaining my written consent, unless my spouse elects a qualified joint and survivor annuity.

_____        _____
Spouse's Signature                                                      Date

**Witnessed By Notary Public**

The foregoing Spouse's signature for consent on this Distribution Request Form was signed in my presence and witnessed by me, a Notary Public in and for said County and State, on the date entered below.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _____, _____, this _____ d    ay of

_____, _____.

My commission expires _____, _____.

STATE OF _____

COUNTY OF _____

_____
Signature of Notary Public

OR

**Witnessed by Plan Representative**

The foregoing Spouse's signature for consent on this Distribution Request Form was signed in my presence and witnessed by me this _____ day of

_____, _____.

_____
Signature of Plan Representative

INSTRUCTIONS FOR COMPLETING THE DISTRIBUTION REQUEST FORM

This form is used to authorize the Trustee to distribute a Participant's vested benefits accrued under the Plan designated. This form is to b completed by the Participant or Beneficiary requesting the distribution. The sections in gray are to be completed by your Human Resources o Benefits Representative (Plan Sponsor or Committee). It is important that all sections of this form be reviewed and completed where necessary Distributions can not be processed if the form is not properly completed.

## EMPLOYEE INFORMATION

You must enter the name and social security number of the Participant. The shaded information must be provided by your Human Resources or Benefit Representative (Plan Sponsor or Committee) and must indicate the total dollar amount of any outstanding loan(s) for recordkeeping purposes.

## PAYEE INFORMATION

The payee social security number, name and address must always be complete and accurate. This information is necessary in order for the Trustee t mail the required tax information to the Participant or Beneficiary requesting the distribution. Also, the payee relationship (Participant, Spousal Beneficiary Non-Spousal Beneficiary, Spousal Beneficiary (QDRO), or Non-Spousal Beneficiary (QDRO) must be checked. Note that payments to a Non-Spousa Beneficiary (QDRO) are taxable to the Participant.

## DIRECT ROLLOVER INFORMATION

The information in this section must be completed in order for the distribution, or portion of the distribution, to be directly rolled over to an IRA of a financia institution or another qualified plan. You must include the name, address, and applicable account numbers for the financial institution sponsoring the IRA or the qualified plan to which the money is being rolled over. The check will be mailed to you and you should then immediately forward it to the IRA o qualified plan. Before you elect a rollover of Company stock (if permitted under the Plan), you should confirm with the trustee of the other plan or IRA tha it will accept a rollover of Company Stock.

## REASON FOR DISTRIBUTION (Check only one box and enter an amount, if applicable.)

The Plan specifies the events that permit the distribution of benefits. The reason for the distribution must be stated for recordkeeping purposes. If you ar requesting a hardship, after-tax, or in-service withdrawal, also enter the amount requested. If the amount you request is more than the amount available the withdrawal will be in the maximum amount available. If the Participant is deceased, your state may require a tax release before distribution can b made. If required in your state, a copy of the release must be attached. If the Plan is a 401(k) plan and allows for hardship withdrawals, you may have t meet special requirements as defined in the Plan. Refer to the Summary Plan Description for these requirements or contact your Human Resources o Benefits Representative (Plan Sponsor or Committee) for more information. If a hardship withdrawal is made, your eligibility to make contributions to th Plan is suspended for one year.

## FEDERAL TAX INFORMATION (Check the applicable box or boxes.)

The Participant or Beneficiary must indicate the withholding requirements applicable to the distribution of benefits. You may incur a penalty if th distribution is eligible for a rollover to another qualified plan or IRA and you elect a direct distribution to you. For more details of the possible ta consequences, refer to the Special Tax Notice Regarding Plan Payments included with this form. Generally you should check only one box, but if you ar electing a hardship distribution, you may need to check more than one box. Effective for distributions made on or after January 1, 2000, if you are unde age 591/2 or you are otherwise not eligible for a distribution that is not subject to the 10% penalty tax on early distributions, hardship distributions of befor tax contributions are not eligible for rollover. Therefore, if you are under age 59 1/2 (or you are otherwise not eligible for a distribution that is not subject t the 10% penalty tax on early distributions), and you are requesting a hardship distribution that includes before tax contributions, you will need to check box for the before tax portion of your distribution. Otherwise, 10% federal income tax withholding will be applied to that portion. Hardship distributions o other contributions may still be eligible for rollover so you may also have to check a box indicating whether the other contributions withdrawn will be paid t you or rolled over to an IRA or another qualified plan.

## STATE TAX INFORMATION (Check only one box.)

The states listed have a mandatory withholding provision for distributions from retirement savings plans. The Participant or Beneficiary must indicat whether or not state taxes are to be withheld for the state in which he or she lives. If mandatory state taxes must be withheld, the minimum withholdin amount will be deducted for the state selected. You may also choose a dollar amount of state taxes to be withheld, which must be greater than you state's minimum amount. You may elect state tax withholding for any other state by specifying the amount or percentage to be withheld.

## FORM OF PAYMENT (Check only one box.)

This information is required before the distribution can be processed by the Trustee. If you wish to elect an available form of payment other than a singl sum payment, refer to the Summary Plan Description or your Human Resources or Benefits Representative (Plan Sponsor or Committee) for details abou the available forms of payment. If you are electing installment payments and you are married, your spouse will be your beneficiary should you die befor your entire vested account balance has been distributed to you unless you attach to this form a Beneficiary Designation Form on which your spouse ha consented to another beneficiary.

## FOR BANK USE ONLY

Do not complete anything in this section. This section is used by the Trustee in order to complete the processing of the distribution.

## MAILING INSTRUCTIONS (Check only one box.)

The Participant or Beneficiary must indicate whether the check is to be mailed to him or her or distribution is to be made by wire transfer. Wire transfer are permitted for distributions of $10,000 or more. The ABA Routing Number must be provided in order to complete the wire transfer. This number can b obtained from the trustee or custodian of the IRA or the qualified plan to which the money is being transferred. You may incur a fee for this service.

## ACKNOWLEDGMENT AND SIGNATURE (Required signature.)

The Participant or Beneficiary must sign this form. A Participant must also check the applicable box according to his or her marital status and existence o a qualified domestic relations order.

## PLAN SPONSOR AUTHORIZATION (Required Signature.)

The Human Resources or Benefits Representative (Plan Sponsor or a Committee) must review and sign this form before the distribution can be processe by the Trustee. This signature authorizes and directs the Trustee to process the distribution.

## SPOUSAL CONSENT (Required Signature)

If the Participant is married, spousal consent is required. The Spouse's signature must be witnessed by a Notary Public OR by the Human Resources o Benefits Representative (Plan Sponsor or Committee).

This notice contains important information you will need before you decide how to receive your benefits from your employer's plan (the "Plan").

This notice is provided to you by the Plan Administrator of the Plan because all or part of the payment that you will soon receive from the Plan may be eligible for rollover by you or your Plan Administrator to a traditional IRA or another qualified employer plan. A "traditional IRA" does not include a Roth IRA, SIMPLE IRA, or education IRA.

If you have additional questions after reading this notice, you can contract your Plan Administrator.

## SUMMARY

There are two ways you may be able to receive a Plan payment that is eligible for rollover:

(1) certain payments can be made directly to a traditional IRA or, if you choose, another qualified employer plan that will accept it ("DIRECT ROLLOVER"), or

2) the payment can be PAID TO YOU.

If you choose a DIRECT ROLLOVER:

- Your payment will not be taxed in the current year and no income tax will be withheld.

- Your payment will be made directly to your traditional IRA or, if you choose, to another qualified employer plan that accepts your rollover. Your Plan payment cannot be rolled over to a Roth IRA, a SIMPLE IRA, or an education IRA because these are not traditional IRAs.

- Your payment will be taxed later when you take it out of the traditional IRA or the qualified employer plan.

if you choose to have a Plan payment that is eligible for rollover PAID TO YOU:

- You will receive only 80% of the payment, because the Plan Administrator is required to withhold 20% of the payment and send it to the IRS as income tax withholding to be credited against your taxes.

- Your payment will be taxed in the current year unless you roll it over. Under limited circumstances, you may be able to use special tax rules that could reduce the tax you owe. However, if you receive the payment before age 59-1/2, you also may have to pay an additional 10% tax.

- You can roll over the payment by paying it to your traditional IRA or to another qualified employer plan that accepts your rollover within 60 days after you receive the payment. The amount rolled over will not be taxed until you take it out of the traditional IRA or the qualified employer plan.

- If you want to roll over 100% of the payment to a traditional IRA or another qualified employer plan, *you must find other money to replace the 20% that was withheld.* If you roll over only the 80% that you received, you will be taxed on the 20% that was withheld and that is not rolled over.

## MORE INFORMATION

### I. PAYMENTS THAT CAN AND CANNOT BE ROLLED OVER

Payments from the Plan may be "eligible rollover distributions." This means that they can be rolled over to an IRA or to another qualified employer plan that accepts rollovers. Payments from a plan cannot be rolled over to a Roth IRA, a SIMPLE IRA, or an education IRA. Your Plan Administrator should be able to tell you what portion of your payment is an eligible rollover distribution.

The following types of payments *cannot* be rolled over:

**Non-taxable Payments.** In general, only the "taxable portion" of your payment can be rolled over. If you have made "after tax" employee contributions to the Plan, these contributions will be non-taxable when they are paid to you, and they cannot be rolled over. (After tax employee contributions generally are contributions you made from your own pay that were already taxed.) Your Plan Administrator should be able to tell you how much of your payment is the taxable portion and how much is the after-tax employee contribution portion.

· ·Example: The portion of your payment that can be rolled over under Part I above is $10,000, and you choose to have it paid to you. You will receive $8,000 and $2,000 will be sent to the IRS as income tax withholding. Within 60 days after receiving the $8,000, you may roll over the entire $10,000 to a traditional IRA or a qualified employer plan. To do this, you roll over the

$8,000 you received from the Plan, and you will have to find $2,000 from other sources (your savings, a loan, etc.). In this case, the entire $10,000 is not taxed until you take it out of the traditional IRA or the qualified employer plan. If you roll over the entire $10,000, when you file your income tax return you may get a refund of part or all of the $2,000 withheld.

If, on the other hand, you roll over only $8,000, the $2,000 you did not roll over is taxed in the year it was withheld. When you file your income tax return you may get a refund of part of the $2,000 withheld. (However, any refund is likely to be larger if you roll over the entire $10,000.)

**Additional 10% Tax if You Are under Age 59-1/2.** If you receive a payment before you reach age 59 1/2 and you do not roll it over, then, in addition to the regular income tax, you may have to pay an extra tax equal to 10% of the taxable portion of the payment. The additional 10% tax generally does not apply to (1) payments that are paid after you separate from service with your employer during or after the year you reach age 55, (2) payments that are paid because you retire due to disability, (3) payments that are as equal (or almost equal) payments over your life or life expectancy (or your and your beneficiary's lives or life expectancies), (4) dividends paid with respect to stock by an employee stock ownership plan (ESOP) as described in Code section 404(k), (5) payments that are paid directly to the government to satisfy a federal tax levy, (6) payments that are paid to an alternate payee under a qualified domestic relations order, or (7) payments that do not exceed the amount of your deductible medical expenses. See IRS Form 5329 for more information on the additional 10% tax.

**Special Tax Treatment if You Were Born before January 1, 1936.** If you receive a payment that can be rolled over under Part I and you do not roll it over to a traditional IRA or other qualified employer plan that will accept it, the payment will be taxed in the year you receive it. However, if the payment qualifies as a "lump sum distribution," it may be eligible for special tax treatment. (See also "Employer Stock or Securities," below.) A lump sum distribution is a payment, within one year, of your entire balance under the Plan (and certain other similar plans of the employer) that is payable to you after you have reached age 59-1/2 or because you have separated from service with your employer (or, in the case of a self-employed individual, after you have reached age 59-1/2 or have become disabled). For a payment to be treated as a lump sum distribution, you must have been a participant in the Plan for at least 5 years before the year in which you received the distribution. The special tax treatment for lump sum distributions that may be available to you is described below.

**Ten-Year Averaging.** If you receive a lump sum distribution and you were born before January 1, 1936, you can make a one-time election to figure the tax on the payment by using "10-year averaging" (using 1986 tax rates). Ten-year averaging often reduces the tax you owe.

**Capital Gain Treatment.** If you receive a lump sum distribution and you were born before January 1, 1936, and if you were a participant in the Plan before 1974, you may elect to have the part of your payment that is attributable to your pre-1974 participation in the Plan taxed as long-term capital gain at a rate of 20%.

There are other limits on the special tax treatment for lump sum distributions. For example, you can generally elect this special tax treatment only once in your lifetime, and the election applies to all lump sum distributions that you receive in that same year. If you have previously rolled over a distribution from the Plan (or certain other similar plans of the employer), you cannot use this special averaging treatment for later payments from the Plan. If you roll over your payment to a traditional IRA, you will not be able to use this special tax treatment for later payments from the traditional IRA. Also, if you roll over only a portion of your payment to a traditional IRA, this special tax treatment is not available for the rest of the payment. See IRS Form 4972 for additional information on lump sum distributions and how you elect the special tax treatment.

**Employer Stock or Securities.** There is a special rule for a payment from the Plan that includes employer stock (or other employer securities). To use this special rule, 1) the payment must qualify as a lump sum distribution, as described above, except that you do not need five years of Plan participation, or 2) the employer stock included in the payment must be attributable to "after tax" employee contributions, if any. Under this special rule, you may have the option of not paying tax on the "net unrealized appreciation" of the stock until you sell the stock. Net unrealized appreciation generally is the increase in the value of the employer stock while it was held by the Plan. For example, if employer stock was contributed to your Plan account when the stock was worth $1,000 but the stock was worth $1,200 when you received it, you would not have to pay tax on the $200 increase in value until you later sold the stock.

You may instead elect not to have the special rule apply to the net unrealized appreciation. In this case, your net unrealized appreciation will be taxed in the year you receive the stock, unless you roll over the stock. The stock (including any net unrealized appreciation) can be rolled over to a traditional IRA or another qualified employer plan either in a direct rollover or a rollover that you make yourself.

If you receive only employer stock in a payment that can be rolled over, no amount will be withheld from the payment. If you receive cash or property other than employer stock, as well as employer stock, in a payment that can be rolled over, the 20% withholding amount will be based on the entire amount paid to you (including the employer stock but excluding the net unrealized appreciation). However, the amount withheld will be limited to the cash or property (excluding employer stock) paid to you.

If you receive employer stock in a payment that qualifies as a lump sum distribution, the special tax treatment for lump sum distributions described above (such as 10-year averaging) also may apply. See IRS Form 4972 for additional information on these rules.

## TERMINATION ACKNOWLEDGMENT

I acknowledge that the undersigned representative of Rust-Oleum Corporation has conducted an exit interview with me.

At this interview, my obligations to protect Rust-Oleum Corporation's trade secrets and proprietary and confidential information were reviewed.   I hereby acknowledge and warrant that if I have any doubt whether a particular item of information is considered to be a trade secret or confidential or proprietary information of Rust-Oleum Corporation, I agree to keep such information secret and not to disclose or use such information for my own benefit or the benefit of others without the express written consent of Rust-Oleum Corporation.

I once again acknowledge and agree not to disclose or use any trade secrets or confidential or proprietary information of Rust-Oleum Corporation for my own benefit or the benefit of others without the express written consent of Rust-Oleum Corporation.

I further acknowledge and warrant that I have delivered to Rust-Oleum Corporation all copies of any company documents and writings, including but not limited to notes, notebooks, letters, blueprints, manuals, drawings, sketches, specifications, formulas, financial documents, computer hardware and software, sales and business plans, and the like, in my possession, custody, or control, except for the following company documents which I have been specifically authorized to keep:

1. _____

2. _____

Date: _____

Signed: _____

Name: _____

SSN: _____

RUST-OLEUM CORPORATION

By: _____

# RUST-OLEUM CORPORATION
## EXIT INTERVIEW QUESTIONNAIRE

We value your comments as you leave the company. We believe that we can use your input to make Rust-Oleum even better in the future. Please take a few minutes to answer the following questions. It is not necessary to sign your name. Your opinion is valued.

Name: _____ Length of Service: ____ years Term Date: _____

Title: _____ Dept: _____ Supv: _____

I.    Which of these factors influenced your decision to leave Rust-Oleum?

☐ Type of Work          ☐ Career Opportunities        ☐ Rate of pay
☐ Benefits              ☐ Return to School            ☐ Commuting Distance
☐ Family circumstances  ☐ Health Reasons              ☐ Retirement
☐ Supervision           ☐ Reduction in Force/Term.    ☐ Other Reason (see below)

_____

_____

## About Your Job

What is your job at Rust-Oleum? Is it what you thought you'd be doing when you came here?

_____

_____

What did you like most about about your job? _____

_____

_____

What did you like least about your job?_____

_____

_____

Who were your supervisors? Were they helpful? _____

_____

_____

Please rate your supervisors on the following points:

|   |   | Almost Always | Usually | Sometimes | Never |
|---|---|---|---|---|---|
| A. | Follows established policies | ☐ | ☐ | ☐ | ☐ |
| B. | Treats all staff fairly and impartially | ☐ | ☐ | ☐ | ☐ |
| C | Provides recognition | ☐ | ☐ | ☐ | ☐ |
| D. | Sets and communicates dept. goals | ☐ | ☐ | ☐ | ☐ |
| E. | Provides feedback throughout the year | ☐ | ☐ | ☐ | ☐ |
| F. | Resolves complaints and problems | ☐ | ☐ | ☐ | ☐ |
| G. | Clearly defines his/her expectations | ☐ | ☐ | ☐ | ☐ |
| H. | Provides necessary training | ☐ | ☐ | ☐ | ☐ |
| I. | Develops cooperation within dept. | ☐ | ☐ | ☐ | ☐ |
| J. | Promotes cooperation with other depts. | ☐ | ☐ | ☐ | ☐ |

How was your workload?  Too heavy?  Too light?  Just right? _____

_____

Who trained you?  Did you get the training you needed to succeed in the job?

_____

_____

Were pay and benefits competitive for your job?_____

_____

Did you feel that your chances for advancement were:

☐ Excellent     ☐ Good        ☐ Fair ☐ Poor        Comments: _____

_____

_____

Would you recommend Rust-Oleum to a friend as a good place to work?

☐ Yes, definitely        ☐ Yes, with reservations _____        ☐ No

If you were to return to Rust-Oleum, what would you like to see changed? _____

_____

_____

How would you describe your overall stay at Rust-Oleum? _____

_____

_____

## Your New Job

If you are going to a new job, what is it? _____

Will you be doing the same type of work at your new job? _____

_____

What does your new job offer that the job you had at Rust-Oleum did not?

_____

_____

## Additional Comments:

_____

_____

_____